**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **EVELYN ROSARIO CRUZ, DANNY RIOS SOTO AND THE LEGAL CONJUGAL PARTNERSHIP COMPOSED BETWEEN THEM** <br><br> Plaintiffs, <br><br> vs. <br><br> **CORPORACION DEL FONDO DEL SEGURO DEL ESTADO DE PUERTO RICO; HOSPITAL INDUSTRIAL DE PUERTO RICO; WALGREENS INC.; WALGREENS OF PUERTO RICO, INC.; DEFENDANTS A, B, C, D, E, F.** <br><br> Defendants. | CIVIL NO. <br><br> RE: ADA, FAILURE TO ACCOMMODATE DISABILITY, EMPLOYMENT DISCRIMINATION, RETALIATION, TORTS, UNJUSTIFIED DISMISSAL, FAILURE TO HIRE <br><br> PLAINTIFFS DEMAND TRIAL BY JURY |

# C O M P L A I N T

**TO THE HONORABLE COURT:**

**COME NOW**, Plaintiffs Evelyn Rosario Cruz ("Rosario"), Danny Rios Soto ("Rios") and the legal conjugal partnership composed between them, through their undersigned attorneys and respectfully state, allege and pray:

## I. NATURE OF THE ACTION AND JURISDICTION

1.     Plaintiffs invoke this Honorable Court's federal question jurisdiction under 28 USC § 1331, for this action seeking compensatory damages, equitable and injunctive relief, costs and attorneys' fees brought pursuant to the American with Disabilities Act of

1990 (ADA), as amended, 42 USC §§ 12101 *et seq.*.

2.      On November 12, 2014, Plaintiff Rosario timely filed with the Puerto Rico Department of Labor's Anti-Discrimination Unit (an EEOC deferral agency) an administrative charge (uada14-866ch) claiming employment discrimination on the basis of physical disabilities (Shoulder Syndrome Adhesive Capsulitis, Frozen Shoulder, Myofascial Syndrome, Cellulitis and Tendonits, among others), failure to provide reasonable accommodation, and retaliation against her employers Defendants Corporación del Fondo del Seguro del Estado de Puerto Rico ("CFSE") and Hospital Industrial de Puerto Rico ("HI"), which is part of the CFSE.

3.      On November 12, 2014, Rosario also filed a similar administrative charge (16H-2015-00123c) with the Equal Employment Opportunity Commission ("EEOC") claiming employment discrimination on the basis of her previously stated physical disabilities, failure to provide reasonable accommodation and retaliation against her employers Defendants HI and CFSE.

4.      On August 26, 2015, the EEOC issued and mailed a Notice of Right to Sue following Rosario's administrative grievances claiming employment discrimination on the bases of her physical disabilities, her employers' failure to provide reasonable accommodation and retaliation.

5.      On August 26, 2015, the EEOC issued a right-to-sue notice in charge number (16H-2015-00123c) which was mailed on August 26, 2015 and received by Rosario on August 29, 2015.

6.     Plaintiffs further summon this Honorable Court's supplemental (pendent) jurisdiction under 28 U.S.C. § 1367 to hear and decide those claims arising under the Commonwealth of Puerto Rico's Constitution and other laws invoked herein because such claims arise from the same nucleus of operative facts giving rise to Plaintiffs' claims under federal law.

7.     Plaintiffs invoke the Honorable Court's supplemental and pendent party jurisdiction to hear and adjudicate their claims against all named party defendants arising under the following Puerto Rico Laws: Act No. 44 of July 2, 1985, 1 L.P.R.A. §§ 501 *et seq.*; Act No. 115 of December 20, 1991, 29 L.P.R.A. § 194; Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5141; Article II, Sections 1, 8 and 16 of Puerto Rico's Constitution and Article 5A of Puerto Rico's Act No. 45 of April 18, 1935 11 L.P.R.A. §§ 1 *et seq.*

8.     Plaintiffs seek redress for the damages they suffered and continue to suffer as a result of defendants HI and CFSE unlawful employment discrimination, including her dismissal and subsequent failure to hire, on the basis of Plaintiff Rosario's physical disabilities, failure to provide reasonable accommodation, and retaliation for having engaged in statutorily protected activity.

9.     Defendants Walgreens Inc. and Walgreens of Puerto Rico, Inc., through its agents, employees, officers, or assigns, were the parties that caused the physical disabilities previously mentioned above to Plaintiff Rosario as a result of their gross and wanton negligence by having administered to her a wrong vaccine thereby causing her severe physical and emotional damages. These defendants have also deliberately

attempted to cover up their unlawful conduct.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## II.      THE PARTIES

11.      Plaintiff Rosario is a female citizen of the United States of America and resident of Rio Grande, Puerto Rico.  She is married to Plaintiff Rios.

12.      Plaintiff Rios is a male citizen of the United States of America and resident of Rio Grande, Puerto Rico. He is married to Plaintiff Rosario.  Both Plaintiffs are suing on their own and on behalf of the legal conjugal partnership composed between them.

13.      Rosario has been diagnosed with Shoulder Syndrome Adhesive Capsulitis, Frozen Shoulder, Myofascial Syndrome, Cellulitis, Tendonitis and Osteoarthritis in her left shoulder, all of which are physical disabilities covered by the ADA.  These physical conditions are "physical disabilities" within the meaning of such term as provided by the ADA, applicable federal regulations and the laws of the Commonwealth of Puerto Rico which have been invoked herein.

14.      Rosario's physical disabilities affect her major life activities of working, sleeping, carrying objects, bathing, dressing, driving, and lifting objects above her head, among others.

15.      At all relevant times to this Complaint, Rosario was an "employee" within the definition of such term as provided by ADA and the laws of the Commonwealth of Puerto Rico which have been invoked herein.

16.      Plaintiff Rosario is also a "qualified individual with a disability" within the meaning of such term as provided by the ADA and the laws of the Commonwealth of Puerto Rico which have been invoked herein.  Rosario could have performed her essential

job functions as an employee of Defendants HI and CFSE with and without reasonable accommodation.

17.     At all relevant times to this Complaint, Defendant HI is part of the CFSE, a public corporation organized under the laws of Commonwealth of Puerto Rico, and was Plaintiff Rosario's employer.

18.     Defendants HI and CFSE have perceived and continue to perceive Rosario as a person suffering from physical disabilities.

19.     At all relevant times to this Complaint, Plaintiff Rosario was a Managerial Pharmaceutical I employee ("Farmacéutico Gerencial I") assigned to work at HI's Pharmacy Services located at San Juan's Medical Center ("Centro Médico").  HI is part of the CFSE.

20.     Defendant HI is considered an "employer" within the definition of such term as provided by ADA and the laws of the Commonwealth of Puerto Rico which have been invoked herein.

21.     Defendant CFSE is also considered an "employer" within the definition of such term as provided by ADA and the laws of the Commonwealth of Puerto Rico which have been invoked herein.

22.     Defendants HI and CFSE and their agents have received actual knowledge of Rosario's disabilities and her requests for reasonable accommodation and administrative charges claiming discrimination; failure to provide reasonable accommodation and retaliation which were filed before the EEOC and ADU.

23.     Defendants Walgreens and Walgreens of Puerto Rico, Inc. were grossly

negligent in the administration of a vaccine to Rosario named "Zostavax" for Herpes Zoster, commonly known as "Shingles," when in fact, Rosario should have been administered another vaccine, that being, "Varivax," which is for chickenpox.  Such gross negligence caused Rosario the previously stated physical disabilities, which in turn, caused her to be discriminated against by her former employers, Defendants HI and CFSE.

24.     Defendants Walgreens and Walgreens of Puerto Rico, Inc., at all times relevant to this Complaint have regularly conducted business within the Commonwealth of Puerto Rico inasmuch as they own, operate, manage and run several pharmacies located around the Island providing pharmaceutical services, such as the selling and dispensing of medications, including the administration of vaccines to the general public, as well as conducting general convenience store type of activities throughout Puerto Rico.

25.     Defendants Walgreens' and Walgreens of Puerto Rico, Inc.'s commercial and business activities conducted within the Commonwealth of Puerto Rico, caused substantial physical and emotional harm to Plaintiffs in this case.

26.     Defendants ABC are Insurance Companies that are the insurers of all the defendants herein. Defendants ABC Insurance Companies have insurance policies which at all times relevant hereto, were in full effect and cover the liabilities and/or unlawful acts which were committed by the defendants herein mentioned. Plaintiffs are using the fictitious names of ABC because at this time they do not know the real names of such insurance companies.  Once these names are known, Plaintiffs will move the Court for a substitution of these parties with the real names of these party defendants.

27.     Defendants DEF are the fictitious names of other individuals that jointly participated along with Defendants HI and CFSE in other acts of unlawful discrimination and other acts sounding in tort against Plaintiffs.  Plaintiffs are using the fictitious names of DEF because at this time they do not know the real names of defendants.  Once these names are known, Plaintiffs will move the Honorable Court for a substitution of party defendants with the real names of these party defendants.

### III.     FACTUAL NARRATIVE COMMON TO ALL CLAIMS

28.     On August 16, 2013, Plaintiff Rosario was hired by CFSE and was assigned to work at HI.

29.     Prior to being hired by the CFSE, Rosario was a licensed pharmacist in Puerto Rico since 1995.

30.     Rosario was initially assigned to work by CFSE as a Pharmaceutical Managerial I employee at the Pharmaceutical Services Department at HI located at Centro Médico, San Juan, Puerto Rico.

31.     Among her essential job duties as a Pharmaceutical Managerial I employee, Rosario was in charge of directly supervising Pharmacist Technicians; she verified and dispensed drug prescriptions; supervised the distribution of medications throughout HI's floors; oriented hospital's patients as to their medications; was in charge of the Emergency Cart and the distribution and maintenance of Inventory of Controlled Substances, among other duties.

32.     Rosario's initial monthly salary amounted to $6,034 and was provided with other fringe benefits.

-8-

33.     As part of Defendants CFSE and HI's job health requirements and in order to be able to work at the hospital, Rosario was required to have been vaccinated twice with the chicken pox vaccine, Varivax.

34.     Following her employers' directives, Rosario received her first chicken pox vaccine on July 31, 2013.  Subsequently, on September 1, 2013, Rosario went to the Rio Grande, Puerto Rico Walgreens pharmacy, located on Puerto Rico Road Num. 3, Km. 23.9, so as to receive her second chicken pox vaccine.

35.     Following her first vaccination on July 31, 2013, Plaintiff Rosario did not suffer any adverse reaction to such vaccine required by her employers as a condition of employment.

36.     On September 1, 2013, when she arrived at the Walgreens pharmacy located in Rio Grande, Puerto Rico, Rosario was erroneously administered the wrong vaccine when she was injected with the Herpes Zoster (Zostavax) vaccine, instead of the required chicken pox vaccine, in her left arm.  Rosario was erroneously administered such Zostavax vaccine by Walgreens pharmacist, Deborah Torres.

37.     Immediately after having been administered the wrong vaccine, Rosario felt discomfort and a burning sensation throughout her entire left arm. Rosario immediately complained of such discomfort to Deborah Torres.  Torres dispelled Rosario's complaints as a customary reaction and did not further investigate Rosario's grievance.

38.     On September 3, 2013, Rosario reported herself to work at HI.  Through the day, she continued to experience the same symptoms in her left arm and the vaccinated area was red.  She showed her arm to her supervisor, Carmen Colón, who did not refer

her to the employee's clinic at CFSE because it was purportedly a customary reaction to the vaccine.

39.     Thereafter, Rosario went to the CFSE's Human Resources Office to complain about this situation and to show human resources officials of the condition of her arm as she was suffering intolerable pain. CFSE officials did not fill in the required paperwork so that she could be referred to Puerto Rico's Workmen's Compensation program to receive treatment and CFSE officials merely brushed off Rosario's complaints by recommending to her to put ice on her shoulder to soothe her redness and physical pain.

40.     Defendants CFSE and HI's Personnel Director, Ivelisse Cancel, saw Rosario's condition and requested another employee to call the Emergency Room at HI so a doctor could look at her. Upon Rosario's arrival at the Emergency Room, a doctor examined her and dismissed her redness as a secondary reaction to the vaccine that had been grossly and negligently administered to Rosario at Walgreens.

41.     Later on that same day of September 3, 2013, Rosario reported to Rio Grande's Centro Diagnostico Tratamiento (CDT) as she required medical treatment as a result of the ill effects of the erroneous vaccination that was wrongly administered by Walgreens on September 1, 2013.

42.     At the Rio Grande CDT, Rosario was diagnosed with acute left arm cellulitis and acute left arm pain.  She was prescribed medication and was issued a certificate allowing her to return to work.

-10-

43.    Rosario returned to work on September 5, 2013 and remained working under great pain, discomfort and a limited range of motion on her left arm.  Rosario remained working under these conditions until December 2, 2013 as she felt that she could no longer manage her debilitating and incapacitating pain resulting from her erroneous and grossly negligent vaccination by Walgreens.

44.    On December 2, 2013, Dr. Denisse Monseratte, a physiatrist located in Luquillo, Puerto Rico, evaluated Rosario and diagnosed her with left cervical myositis and left shoulder bicipital tendinitis, dorsal tenosynovitis. Dr. Monseratte prescribed physical rehabilitation therapy session for two or three times per week.  Rosario had six physical therapy sessions and was reevaluated on December 16, 2013.

45.    Rosario continued working up at her employment site until December 16, 2013. On such date, she reported again to Dr. Dennise Monseratte, who proceed to reevaluate her.

46.    On December 16, 2013, Dr. Monseratte diagnosed Rosario with severe cervical dorsal sprain, myofascial pain and cellulitis in her left arm.

47.    On December 16, 2013, Dr. Monseratte placed Rosario on a mandatory sick leave from such date until January 8, 2014 and prescribed further physical therapy. Such medical instructions were notified by Rosario to CFSE and HI officials as well as their Human Resources Department.

48.    On December 30, 2013, while continuing to suffer great pain in her left arm, Rosario decides to go to CFSE's Human Resources Office for the corresponding filing of her request to report herself as a patient to Puerto Rico's State Insurance Fund, which is

Puerto Rico's Workmen's Compensation bureau or agency.

49.     Rosario's immediate supervisor, Carmen Colón, initially unlawfully refused to sign the required State Insurance Fund's Employer's Report, because in her (Colón's opinion) Rosario's condition was not as a result of the September 1, 2013 vaccination.

50.     However, it was not until December 31, 2013, that Rosario was able to report herself to the Puerto Rico State Insurance Fund to seek treatment for a work-related condition that was caused due to a job health requirement that she be vaccinated with the chicken pox vaccine.   However, she was not administered the correct vaccine by Walgreens officials.

51.     On January 3, 2014, Rosario notified her employers that she had reported herself to the State Insurance Fund and that it had found that her physical conditions were indeed work related.

52.     On January 3, 2014, Rosario also went to Walgreens Rio Grande to advise them that she had been placed on a work related leave by Puerto Rico's State Insurance Fund as a result of the physical conditions following her wrongful vaccination.

53.     While at Walgreens, Rosario met Manager Madeline Rivera and explained to her what had happened with the vaccination incident.   Rosario then requested Rivera to prepare the STARS and VAERS reports (the latter being a document from the US Department of Health where the side effects of vaccines are reported).

54.     During this conversation, Rivera indicated to Rosario that the original interview and questionnaire documents that were prepared by Walgreens documenting the September 1, 2013 vaccination had been lost or misplaced.   As such, Rivera

-12-

requested Rosario that she needed to sign another document and Rosario refused because the information being placed would erroneous because a different vaccination date and vaccination lot number was to be indicated.

55.     On January 10, 2014, Rosario engaged in statutorily protected activity and requested reasonable accommodation due to her physical disabilities.  To such effect, on such date, Rosario sent a telephone text message to Ms. Elba Carrasquillo, from the CFSE's Recruiting Department, requesting a day shift instead of a nightshift so that she could visit the State Insurance Fund's Physiatrist as her prescribed medications made her sleepy.

56.     Rosario's employers only partially complied with her accommodation request, as she was only assigned the day shift for the period of one week with a full work load, without engaging in reasonable accommodation talks with Rosario so as to attend her diminished physical capacities to perform the essential functions of her job.

57.     On January 10, 2014, Rosario spoke with Maria Díaz, Chief of Pharmacy at HI, and requested from her as to when she would make good on her promise to Rosario of giving her, job permanency (regular employee) during the first three months of employment tenure.  Rosario further grieved that she had not been paid the night shift wage differential.

58.     On January 10, 2014, Rosario send a text message to Deborah Torres, the Walgreens' pharmacist that erroneously administered to Rosario the wrong vaccine, inquiring as to whether the VAERS report had been completed and sent and because Rosario wanted a copy. Deborah Torres did not respond.

-13-

59.     The State Insurance Fund placed Rosario on medical leave or rest until January 10, 2014 and to continue to receive treatment while working (C/T) commencing on January 11, 2014.  The State Insurance Fund related Rosario's physical conditions to a work related accident.

60.     On Monday, January 13, 2014, Rosario returned to work and performed her duties without any help from pharmacy technicians and worked alone, under great physical pain, for the entire work shift from 8:00 am to 4:15 pm.

61.     On January 15, 2014, Deborah Torres from Walgreens notified Rosario that the VAERS had been sent.  Rosario once again requested copy of the VAERS and STARS Reports, which were never provided to Rosario.

62.     On January 18, 2014, while working at Walgreens, Rosario read the incident report involving her September 1, 2013 vaccination and was able to determine that Walgreens had failed to properly document the facts involving this matter, including the not reporting of Rosario's medical conditions and diagnosis.  As such, Walgreens fraudulently engaged in the spoliation and tampering of evidence.

63.     On January 21, 2014, during a medical treatment visit by Rosario to the State Insurance Fund, she was diagnosed with Adhesive Capsulitis in her left shoulder, that is, the same arm she was wrongfully vaccinated back in September 1, 2013. She was prescribed further physical therapy and given another appointment for February 11, 2014 by Dr. Salgado, a SIF Physiatrist.

64.     On January 22, 2014, the SIF issued an Administrative Decision decreeing that Rosario would remain at rest until February 5, 2014, commencing to work under

continuing treatment (C/T) on February 6, 2014, which later was changed to February 19, 2014.

65.     On February 11, 2014, Rosario went to her medical appointment with the State Insurance Fund ("SIF") as previously scheduled.  However, upon her arrival she found out that her physiatrist, Dr. Salgado, no longer worked for the SIF and Rosario was referred to the SIF in Fajardo, Puerto Rico.

66.     On February 21, 2014, Rosario became aware that the vaccine that was administered by Walgreens on September 1, 2013 was not the correct one that she had to be administered with. She had to be vaccinated for chicken pox, with the Varivax vaccine, yet she was administered the Zostavax vaccine, which is the one for Shingles.

67.      Rosario became aware that she had been administered the wrong vaccine on September 1, 2013, when she checked the lot number on her Walgreens' Immunization Record Card and researched this information on the National Vaccine Information Center and found out that the vaccine lot number written on her Immunization Card belonged to the Zostavax vaccine for Shingles and not the Varivax vaccine for chicken pox.

68.      Rosario corroborated the fact that she had been vaccinated with the wrong vaccine when she visited Dr. Diaz Sojo, who ordered her to undertake certain laboratory tests involving antibodies.

69.     On February 22, 2014, Rosario received her laboratory test results which were positive for the Herpes Zoster type 1.

70.     On February 24, 2014, Rosario visited physiatrist Nancy Alicea at HI. Dr. Alicea concluded that Rosario suffered from Adhesive Capsulitis and ordered 10 additional physical therapies and rest.

71.     On February 25, 2014, Rosario began a new round of physical therapies at SIF's facilities located in Fajardo, Puerto Rico. On such date, Rosario was placed on medical work leave or rest until March 10, 2014 and on March 11, 2014 she would be allowed to return to work while continuing treatment at SIF.

72.     On February 25, 2014, Rosario informed her immediate supervisor, Carmen Colon and Maria Díaz, Chief of Pharmacy at HI that she had been placed on medical work leave or rest by the SIF until March 10, 2014 and that ten additional physical therapies had been prescribed to her.

73.     On February 26, 2014, Dr. Melvin Santoni Crespo from the CFSE or SIF, unlawfully closed Rosario's SIF case and ordered her immediate discharge because she purportedly had received the maximum amount of treatment available, eliminating one of her physical conditions while the other remained pending as to whether it was work related or not.

74.     Subsequently, on February 27, 2014, Rosario grieved to CFSE's Human Resources complaining that she had been unlawfully discharged by Dr. Santoni Crespo before she was allowed the culminating of her physical therapies.  Rosario requested, as a reasonable accommodation under the ADA and Puerto Rico Act No. 44, to be able to conclude her physical therapies that had been previously ordered by Dr. Nancy Alicea since February 24, 2014, so she would be able to return to work.

75.     In addition, Rosario contacted Merck Pharmaceuticals to inquire what the Lot Number on her Walgreens' Immunization Card stood for.  Merck advised that Lot Number J000436 on her immunization card corresponded to Zostavax vaccine and not the Varivax vaccine she should have been administered.

76.     On February 28, 2014, Rosario once again engaged in statutorily protected activity under the ADA when she requested reasonable accommodation to have her Adhesive Capsulitis condition be evaluated by a private orthopedic surgeon inasmuch as the CFSE never referred her to such type of physician.  In so doing, Rosario grieved about this situation to CFSE's Human Resources Department.  Dr. Alicea had previously requested that Rosario be referred for diagnosis and treatment to an orthopedic surgeon.

77.     On February 28, 2014, Rosario notified her grievances and requests for reasonable accommodation to her employers in writing.

78.     On March 3, 2014, Rosario visited an orthopedic surgeon, Dr. Francisco J. Carlo at the Auxilio Mutuo Hospital Tower located in Hato Rey, Puerto Rico.  Dr. Carlo confirmed that Rosario had Adhesive Capsulitis in her left shoulder and he recommend that Rosario attempt the reopening of her case with the SIF.

79.     On March 4, 2014, CFSE once again undertook the task of completing the paperwork for the filing of another case to report Rosario's Adhesive Capsulitis for treatment at the SIF.  However, when Rosario went to the SIF she was not afforded treatment because there were two cases for the same condition having the same date. This conduct constitutes another retaliatory act against Rosario due to her physical

disability and because she had requested reasonable accommodation in order to treat her physical condition affecting her left shoulder.

80.   On March 5, 2015, Rosario attempted to seek treatment at the SIF facilities located in Fajardo, Puerto Rico however, she was unlawfully denied treatment, on account of her mentioned disabilities and having requested reasonable accommodation, by her employers.  SIF personnel in Fajardo, advised Rosario that she had to go to the Industrial Commission in order to determine whether this condition of Adhesive Capsulitis was related to her case that had already been (illegally) closed and she had been unlawfully been discharged by SIF.

81.   On March 14, 2014, while seeking the payment of her salary, Rosario's immediate supervisor, Carmen Colon informed her that she (Rosario) should go by CFSE's Human Resources Office.  Colon escorted Rosario to the Human Resources Office and then left such office.

82.   While at CFSE's Human Resources Office, Ms. Ivelisse Cancel, Human Resources Manager, informed Rosario that her employment contract would not be renewed or extended effective April 1, 2014.  Cancel gave Rosario a letter of termination of employment dated **February 28, 2014 on March 14, 2014.**

83.   During the March 14, 2014 meeting, Cancel informed Rosario that she had been purportedly terminated from her employment due to economic reasons and not her physical disabilities associated with her shoulder.  Such advanced reasons for Rosario's dismissal were pretextual because during such same month other pharmacists had been

-18-

hired by the CFSE and nobody else in her job classification and job status had been laid off.

84. One month after Rosario was unlawfully terminated, Defendants CFSE and HI posted job openings or vacancies for similar job classifications to the one Rosario occupied at the time of her wrongful dismissal from her employment.

85. On March 25, 2014, Rosario was operated on her left shoulder to address her condition of Adhesive Capsulitis by Dr. Ingrid Negron, at the Ashford Presbyterian Hospital, and not by the SIF even when such condition was work related.

86. Thereafter, Rosario was subjected to at least 15 physical therapies for her left shoulder.

87. On June 27, 2014, Rosario was subjected to another operation involving manipulation of her left shoulder under anesthesia by Dr. Negron. Thereafter, she continued under physical therapies.

88. On December 22, 2014, defendants CFSE and HI published two public announcements seeking candidates for the very same position, Pharmaceutical Managerial I, previously occupied by Rosario. Rosario applied for this job vacancies or openings on February 1, 2015, for these positions available at CFSE central offices and at the HI, but was not hired by her former employers due to her disabilities, unlawful employment discrimination and in retaliation because she had engaged in statutorily protected activities.

-19-

89.     On February 12, 2015, Rosario sent an extrajudicial demand letter to Walgreens and Walgreens of Puerto Rico, thereby tolling or interrupting the applicable statute of limitations in this case against these defendants.

90.     At all relevant times to this Complaint, Defendants CFSE and HI refused to provide Rosario with her requested reasonable accommodations involving her physical conditions previously detailed affecting her left shoulder and further discriminated against her because she engaged in ADA statutory protected activity.

91.      Defendants CFSE and HI failed to comply with their obligation to provide an accommodation that would have enabled Rosario to perform her job effectively or benefit from an equal employment opportunity. CFSE and HI did not address what type of accommodation was needed by Rosario.  As her employers, CFSE and HI failed to determine the specific physical needs of Rosario in relation to the specific job tasks to be performed.

92.     Rosario's employers failed to determine what accommodations might be provided through those methods authorized by applicable ADA regulations and case law. As such, Defendant CFSE and HI violated the ADA.

93.     As a result of Plaintiff Rosario's continued requests for accommodation, her employers engaged in retaliatory behavior. This behavior altered the terms and conditions of her employment.  As a result of these actions, Rosario has been discriminated by reason of her physical disability, and not having been provided a reasonable accommodation.

## IV.     FIRST CAUSE OF ACTION

**(ADA: Disability Discrimination, Failure to provide Reasonable Accommodation, Retaliation and Failure to Hire)**

94.    Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporates them by reference hereto.

95.    Defendants CFSE and HI have willfully violated ADA's provisions by engaging in discriminatory employment practices against Rosario on account of her disability by failing to provide reasonable accommodation, in retaliation for having engaged in statutorily protected conduct, and for their failure to hire after she was terminated from her employment when she requested and applied for employment to the same position she occupied and to others she was qualified for.  As such, these defendants are liable in compensatory damages against Plaintiffs for its unlawful conduct.

## V.  SECOND CAUSE OF ACTION
### (Violation of Puerto Rico Act. No. 115)

95.    Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporates them by reference hereto.

96.    Defendants CFSE and HI have willfully violated Puerto Rico Act No. 115 provisions by engaging in retaliation against Rosario on account that she engaged in statutorily protected activity for having complained to the EEOC and had reported herself to the CFSE due to her work related accidents and disability discrimination against defendants.

97.    After Rosario reported herself to the SIF for the work related injury after and as a result of being wrongfully vaccinated with the improper vaccine at Walgreens Pharmacy located in Rio Grande, Puerto Rico, Rosario's employers, CFSE and HI,

retaliated against her because she reported herself to the SIF, in violation to Puerto Rico Act No. 115.

98.     As such, defendants CFSE and HI are liable in compensatory and punitive damages against Plaintiffs for their unlawful conduct.

## VII.    THIRD CAUSE OF ACTION
### (Violation to Article II of Puerto Rico's Constitution)

99.     Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them by reference hereto.

100.    Defendants CFSE and HI have violated Plaintiff Rosario's rights secured under Article II, Sections 1, 8, 16 of Puerto Rico's Constitution by violating the dignity, privacy, health at the work place and discriminating against her on the basis of her disability.

101.    Plaintiff Rosario is entitled to compensatory damages as she has suffered considerable economic and personal damages as a result of Defendants' conduct.

## VIII.   FOURTH CAUSE OF ACTION
### (Violation to Puerto Rico Act No. 44)

102.    Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them by reference hereto.

103.    Defendants CFSE and HI have violated Plaintiff's rights secured under Puerto Rico Act No. 44, previously cited to herein.  Defendants CFSE and HI have discriminated against Plaintiff on account of his disability and in retaliation for having engaged in statutorily protected conduct.

-22-

104.    Plaintiff Rosario is entitled to compensatory and economic damages. Plaintiff Rosario has suffered considerable economic and personal damages as a result of Defendants' conduct.

## IX. FIFTH CAUSE OF ACTION
### (Violation to Puerto Rico's Civil Code Article 1802)

105.    Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them by reference hereto.

106.    Defendants Walgreens, Inc. and Walgreens of Puerto Rico, Inc., failed to exercise a duty of care towards Plaintiff Rosario when its employees wrongfully and negligently administered the wrong vaccine to Rosario on September 1, 2013.  These defendants negligently hired and trained their Pharmacist Deborah Torres in the proper method of administering these types of vaccines.  These defendants further failed to follow their own safety protocols governing the administering of vaccines and have further engaged in spoliation of the evidence.

107.    Plaintiff Rios and Rosario have both suffered emotional and economical damages on account of Walgreens, Inc. and Walgreens of Puerto Rico, Inc. actions and omissions.

## X.   SIXTH CAUSE OF ACTION
### (Violation to Puerto Rico's Civil Code Article 1802)

108.    Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them by reference hereto.

109.    Plaintiff Rios has suffered emotional and economical damages as a result of Defendants CFSE and HI unlawful discrimination practices against his wife, Plaintiff Rosario.

## XI.   SEVENTH CAUSE OF ACTION
### (Violation to Puerto Rico's Workmen's Compensation Statute, Article 5A of Puerto Rico's Act No. 45)

110.    Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them by reference hereto.

111.    Defendants CFSE and HI have violated Plaintiff Rosario's reemployment rights following a State Insurance Fund leave to be reinstated to her former job position at the CFSE and HI.   As such, these defendants are liable to Plaintiffs for backpay and emotional damages, plus reinstatement.

**WHEREFORE**, premises considered, Plaintiffs pray that this Honorable Court enter Judgment against Defendants and grant Plaintiffs the following relief:

(a)    An award of compensatory damages, including but not limited to back pay and prejudgment interests, of not less than TWO MILLION DOLLARS ($2,000,000.00);

(b)    An award of double compensatory damages under Puerto Rico Law Nos. 115 and 44;

(c)    An award of costs and reasonable attorney's fees;

(d)    Reinstatement of Plaintiff Rosario to her former position at CFSE and HI.;

(e)     An award of compensatory damages against Defendants Walgreens and Walgreens of Puerto Rico, Inc. and prejudgment interests, of not less than TWO MILLION

-24-

DOLLARS ($2,000,000.00);

      (f)     Any other and further relief, which this Honorable Court may deem just,

and proper.

      (g)     A trial by jury.

In San Juan, Puerto Rico, this 20th day of November, 2015

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 20th day of November, 015.

**/s/ JOSE G. FAGOT DIAZ**
**USDC PR No. 204112**
**Attorney for Plaintiff**
166 Presidente Ramirez St., Apt. # 2
Urb. Baldrich
Hato Rey, PR 00918
Tel:  (787) 763-1351
email: jgf@fagot-law.com

**/s/ MANUEL E. LOPEZ FERNANDEZ**
**USDC PR NO. 205507**
**Attorney for Plaintiffs**
B-12 Paseo del Prado
San Juan, PR 00926
Tel.: (787) 562-2040
email: lcdomanuel.lopez@gmail.com;
manrique.lopez@hotmail.com